Judge Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>JOSHUA REGAN,<br><br>Defendant. | NO. CR25-061JNW<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

In his small Seattle apartment, Joshua Regan amassed an arsenal. Nine guns, some unserialized and some loaded. A loaded shotgun sitting by the door. Hundreds of armor-penetrating rounds. Dozens of fragmenting rounds. Body armor. Silencers.

Regan kept those weapons despite the flagrant danger they posed, and despite being prohibited from possessing them for over a decade. He did so in connection with the half-kilo of drugs that he stored in and distributed from the apartment. And he did so while abusing hallucinogenic and disinhibiting drugs like LSD and methamphetamine.

Fortunately, HSI intervened before any known violence occurred. They identified Regan from his gun-related online purchases and searched his apartment. Regan continued dealing drugs out of his car until he was apprehended a few weeks later.

For that severe, dangerous conduct, the government recommends a custodial sentence of 72 months, followed by a three-year term of supervised release.

United States' Sentencing Memorandum - 1
*United States v. Regan*, CR25-061JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# BACKGROUND

Last year, an HSI team investigating suspected purchases of Glock switches—devices inserted into semiautomatic guns to make them automatic—identified Joshua Regan as a potential purchaser. PSR ¶ 16. Agents investigated further and obtained a warrant to search his Seattle apartment, which was one of approximately ten units in a converted house. PSR ¶ 17; Dkt. 1 ¶ 7.

Agents searched the apartment in February 2025. PA, Dkt. 20, ¶ 9(c). Regan was not present. PA ¶ 9(c). Agents found nine guns, including three AR15-style rifles. PA ¶ 9(d). A loaded shotgun was sitting by the front door. PA ¶ 9(d). Three of the guns lacked a serial number. PA ¶ 9(d). Six of them were loaded, some with penetrating or fragmenting rounds. PA ¶¶ 9(d), (e). The photograph below shows some of the guns after the search team compiled them:



Regan was prohibited from possessing those weapons and the ammunition, and he knew that, due to a 2013 felony conviction for distributing heroin. PA ¶¶ 9(a), (b).

Regan also had a plethora of gun parts and accessories in his apartment. He had more than 1,500 rounds of ammunition, including hundreds of penetrating rifle rounds and dozens of fragmenting pistol rounds. PA ¶ 9(e). He had body armor. PA ¶ 9(e). He had suppressors, one of which was attached to an AR15 rifle:

United States' Sentencing Memorandum - 2
United States v. Regan, CR25-061JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10 | PA ¶¶ 9(d), (e).
11 |      Lastly, agents found over a half-kilogram of a powder that field-tested positive for
12 | methamphetamine. PA ¶ 9(f). Lab testing of a portion of the powder confirmed it to be
13 | mescaline, the hallucinogen and Schedule I controlled substance contained in the peyote
14 | cactus. *See* Exhibit 1 at 1 (Item 003). (Lab testing of the balance of the powder remains
15 | pending. *See id.* at 2 (Item 047).) Regan intended to distribute at least some of it and
16 | admits that he possessed the guns in connection with the drugs. PA ¶ 9(g).
17 |      Regan was charged by complaint with unlawful possession of a firearm, Dkt. 1,
18 | and a few weeks later Seattle Police located and arrested him. PA ¶ 9(h). In his car,
19 | Regan had more drugs—methamphetamine, LSD, heroin, and fentanyl—as well as
20 | baggies, a scale, and $1,920 in cash. PA ¶ 9(h); Exhibit 1 at 1-2 (Items 001-2, 002, 003-2,
21 | 004, and 005). (Lab testing of the other drugs found in the car remains pending. *See id.*
22 | at 2 (Items 001, 006, and 007).) Those drugs too were intended, at least in part, for
23 | distribution. PA ¶ 9(h).
24 |      Regan promptly expressed interest in pleading guilty. Less than a month after his
25 | arrest, he entered a plea to one count of felon in possession of a firearm. PA ¶ 2. He
26 | acknowledges through a Guidelines enhancement that he possessed the guns in
27 | connection with a drug felony. PA ¶¶ 9(g), 10(d). Regan professes that he inherited the

United States' Sentencing Memorandum - 3
*United States v. Regan*, CR25-061JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

guns from his father in 2024 and used them for collecting, tinkering, and shooting at the gun range. PSR ¶ 62.

## SENTENCING GUIDELINES

The government agrees with Probation's calculations of the Guidelines range. PSR ¶¶ 27-45, 87. Regan's base offense level is 20 under USSG § 2K2.1(a)(4), and three four-level increases apply due to the quantity of guns, the unserialized guns, and for possessing the guns in connection with a drug felony. PSR ¶¶ 29-32; *see* PA ¶ 10. After applying credit for acceptance of responsibility, Regan's total offense level is 29. His criminal history category is I, and he does not qualify as a zero-point offender because he possessed a firearm. *See* USSG § 4C1.1(a)(7). The Guidelines range is 87 to 108 months.

## SENTENCING RECOMMENDATION

It is difficult to overstate the danger caused by Regan's conduct. He crammed nine guns into his small studio apartment. He kept many of them loaded, some with armor-piercing or fragmenting rounds. He stored a shotgun by the door and kept at hand body armor and silencers, one of which was attached to one of his AR15s. Amid that cache, Regan struggled with significant drug abuse that involved hallucinogens, stimulants, and opioids. PSR ¶ 72.

Exacerbating the danger, Regan used the guns to defend a stash of drugs. He dealt them out of his apartment and, even after having his guns and some drugs seized by HSI, he dealt more drugs out of his car. This was not his first foray into drug trafficking, which saw him serve a yearlong sentence a decade earlier. Nor were these crimes of desperation—Regan acknowledges having gainful employment and access to significant assets. PSR ¶ 84. Yet the drugs he dealt contributed to community strife and fed countless addictions like the one Regan himself was battling. They also risked bringing the violence ubiquitous in the drug trade to Regan's doorstep, which doubled as the doorstep for his many neighbors. Only good fortune and proactive law enforcement prevented greater tragedy.

United States' Sentencing Memorandum - 4
*United States v. Regan*, CR25-061JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Regan provides a minimizing account of how he acquired and used the guns. He says he acquired them passively, by inheriting them from his father, and used them innocuously, by collecting them, firing them at the range, and "tinkering" with them. PSR ¶ 62. The government cannot disprove those claims, but they are difficult to square with some of the evidence. Who needs rounds designed to pierce body armor or fragment upon impact at the gun range? Or nine different guns? Or unserialized ghost guns? Or body armor? Or silencers? Why store most of the guns loaded? Why keep the shotgun—also loaded—at the front door?

Regan's conduct deserves a serious sanction even if there is truth to his story. Every day he failed to divest himself of the guns was an affirmative act to continue knowingly violating the law and endangering himself and others. He also took affirmative steps after inheriting the guns by acquiring additional gun parts. And his admission that he possessed the guns in connection with the drugs he was dealing means that his professed nonviolence lasted only as long as his drug stash remained safe. That is, even crediting Regan's account, it was a fortunate happenstance that HSI caught him before he had occasion to use his arsenal in violent defense—and that he was not home when they served the search warrant.

To be sure, certain aspects of Regan's past and present serve to mitigate the appropriate sentence. He has spent most of his life grappling with severe and escalating substance abuse issues, which appear to have been most acute during the timeframe at issue here. PSR ¶¶ 57, 72-76. He has a limited criminal history besides his 2013 felony for heroin distribution. PSR ¶¶ 42-52. And upon his arrest he promptly accepted responsibility for the full scope of his conduct. For those reasons, and considering all of the sentencing factors, the government believes a sentence slightly below the Guidelines range is appropriate.

The government recommends a 72-month custodial sentence followed by three years of supervised release. The government supports the conditions of supervision

United States' Sentencing Memorandum - 5
*United States v. Regan*, CR25-061JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

proposed by Probation, which are warranted in light of the offense conduct and the contributing factors of substance abuse and mental health concerns. The government also agrees with Probation that Regan's significant liquid assets warrant the inclusion of a fine in the final judgment. PSR ¶ 84.

## CONCLUSION

The government respectfully recommends a custodial sentence of 72 months, three years of supervised release, a fine, and a mandatory fee of $100.

DATED this 9th day of July, 2025.

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

*s/ David T. Martin*
DAVID T. MARTIN
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-2478
david.martin2@usdoj.gov

United States' Sentencing Memorandum - 6
*United States v. Regan*, CR25-061JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970